STEVEN BROWER (SBN: 93568)
BUCHALTER NEMER
A Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: (949) 760-1121
Facsimile: (949) 720-0182
Email: sbrower@buchalter.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYMAX CO., LTD,<br><br>            Plaintiff,<br><br>      vs.<br><br>GRZEGORZ GRYCUK, ECSRO,<br>ECSRO.NET, GOLD SOLD,<br>GOLDSOLD.PL and DOES 1-10,<br>Inclusive,<br><br>            Defendants. | Case No. SACV 09-01432 JVS (Ex)<br><br>**AMENDED[1] APPLICATION FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF KANG JI HO; DECLARATION OF STEVEN BROWER** |

PLEASE TAKE NOTICE that Plaintiff Joymax Co., LTD. ("Joymax"), pursuant to Federal Rules of Civil Procedure 55(b)(2) hereby applies to the Court for entry of a Default Judgment against Grzegorz Grycuk, ECSRO and ESCRO.NET.

This matter is being presented as an Application, and not as a motion, because there are no adverse parties who have appeared in this action. Specifically, on September 27, 2010 the Clerk entered the default (Docket #22) of defendants Grzegorz Grycuk, ESCRO and ESCRO.NET, at the specific direction of this Court (Docket #21). The only remaining parties (Goldsold and Goldsold.PL) were

---

[1]      On May 9, 2011, this Court entered a minute order (Docket #36) allowing the filing of this Amended Application. The Court further indicated that if a hearing was necessary, such date would be set by the Court.

1  ordered dismissed, without prejudice, on October 13, 2010 (Docket #24).

2      This application is based on the attached Memorandum of Points and

3  Authorities and the concurrently filed Declarations of Kang Ji Ho and Steven

4  Brower.

5      If the Court believes that an appearance by counsel for Joymax would be

6  appropriate, or if the Court requires any other information, Joymax will, of course,

7  comply.

8

9  DATED: May 31, 2011                    BUCHALTER NEMER
                                          A Professional Corporation

10

11                                        By:_____

12                                              STEVEN BROWER
                                                Attorneys for Plaintiff

13                                              Joymax Co., Ltd.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## Factual and Legal Summary

As set forth in the Declaration of Kang Ji Ho ("Ho Declaration"), in combination with the fact that each of the remaining defendants has been defaulted, the facts are, with specifically noted exceptions, essentially what is alleged in the Complaint.

Plaintiff Joymax is a company which has developed and marketed a very popular online computer game known as Silkroad Online (SRO). Customers download software which runs on their personal computer, while interacting over the internet with related (but different) software which runs on larger computers referred to as servers. Joymax holds a valid U.S. Copyright registration for the server software as an <u>unpublished</u> work. Joymax also holds a U.S. Trademark registration for the name "Silkroad Online."

This combination of software allows players, all over the world, but with a substantial and significant representation in the United States, to interact with each other "in" the game. Players, seeking to advance in the game, or to get better access to better servers, or to get certain premium "items" for use in the game, pay money to Joymax to purchase those items.

The defaulting defendants are an individual residing in Poland, Grzegorz Grycuk, and one of his businesses, defaulted defendant ECSRO, which used the internet domain address www.ecsro.net (also a defaulted defendant). The defendants made available, at www.ecsro.net, server software which unpublished, which was not regularly available to anyone outside of Joymax, and which was illegally copied (i.e. – stolen), without any claim of right, from plaintiff Joymax.

Because of the default, and the difficulty in obtaining direct information from a "pirate" website in Poland, Joymax has no direct evidence of the profits made by the defendants. Therefore, the monetary portion of the judgment requested is based solely on a reasonable business calculations, by Joymax, of the revenue which it

1    lost, plus attorney fees and costs.  In the alternative, Joymax would request an

2    amount no less than the statutory minimum for willful infringement.

3        More importantly, in an effort to mitigate the past and future harm, Joymax

4    requests the reassignment of the domain name www.ecsro.net to Joymax so that

5    Joymax will be able to: a) avoid the future use of the unlawfully utilized domain

6    name by the defaulted software pirates; b) establish contact with potential

7    customers who might, when they attempt to access that domain name, thereafter be

8    a source of future business for the legitimate versions of SRO being offered by

9    Joymax.

10                    **Legal Standard on Default Judgment**

11        Well-pled factual allegations in a complaint are taken as true, except for

12   those allegations relating to damages. *Philip Morris USA, Inc. v. Castworld Prods.,*

13   *Inc.,* 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing *TeleVideo Sys., Inc. v.*

14   *Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987)); *Geddes v. United Financial Group*,

15   559 F.2d 557, 560 (9th Cir. 1977).

16        In determining damages or other requested relief, a district court may rely on

17   the declarations submitted by the plaintiff or conduct a full evidentiary hearing.

18   Fed.R.Civ.P. 55(b)(2). "A plaintiff's burden in `proving up' damages is relatively

19   lenient." *Philip Morris USA,* 219 F.R.D. at 498. "[F]undamental fairness, required

20   by due process of law, limits the scope of relief[,]" *id.*, which is, undoubtedly, why

21   Rule 54(c), Fed.R.Civ.P., proscribes that a "default judgment must not differ in kind

22   from, or exceed in amount, what is demanded in the pleadings." Rule 54(c),

23   Fed.R.Civ.P. "In applying this discretionary standard, default judgments are more

24   often granted than denied." *Philip Morris USA*, 219 F.R.D. at 498 (quoting

25   *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D.Cal. 1999)).

26        The Ninth Circuit has enumerated seven factors for a district court to

27   consider in determining whether to grant a default judgment: (1) the merits of the

28   plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) the sum of

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 8286975v2

4

money at stake in the action; (4) the possibility of prejudice to the plaintiff; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits. *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986); *Truong Giany Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173 (N.D. Cal. 2007).

Here, Joymax would respectfully submit that all factors are in the favor of Joymax.

As required by the Hague Convention on Service of Process for Poland, and as reflected in the papers previously submitted in support of the entry of default, the Complaint here was translated into Polish before it was served on the defaulting defendants.

The Court, in reviewing the Complaint, will note that it was not a minimal notice pleading.  Rather, recognizing that this case might proceed to a default, Joymax carefully included extensive factual and legal detail in an effort to ensure that the defendants would understand the allegations.  So, having provided a detailed Complaint, and having translated that Complaint into Polish and having undertaken "formal" service under the Hague Convention, notice has been fully and adequately provided.

The defendants have had several months, both before and after the entry of default, in which to respond.  There has been no communication with the court.  It would be prejudicial to Joymax if a default judgment is not entered and, notwithstanding the policy favoring a decision on the merits, there is no reason to believe that defendants will now appear and participate.

## **Legal Standard on Relief Requested - Damages**

As more fully explained in the Complaint (¶ 10) the computer software at issue here is the "server" portion of the software.  Neither the source code nor the object code is published.  Therefore, as stated in the Complaint, "The SRO 'server'

software remains an <u>unpublished</u> work subject to copyright protection, trade secret protection, and it is the actual property of Joymax." [Complaint, page 3, lines 22-24, emphasis added]

The status of the software as an unpublished work was also specifically alleged in Paragraph 25 of the Complaint which states "On October 30, 2009, the United States Copyright Office issues a registration to Joymax for the Silkroad Online Server Software, an <u>unpublished</u> computer program, Registration Number TXu 1-621-282." [emphasis added]

A copy of the Certificate of Registration is attached to the Amended Declaration of Steven Brower, along with pages from the Federal Register reflecting that the lowercase "u" in the registration number indicates that the copyright was issued for an unpublished work.

Because this is an unpublished work, the limitation on damages imposed by 17 USC § 412 does not apply here and Joymax contends it is entitled to an award of damages (actual or, in the alternative, statutory) plus attorney fees and costs.

In evaluating the amount of actual damages Joymax would respectfully submit that it should be entitled to such an award based upon a reasonable estimate. "A plaintiff's burden in `proving up' damages is relatively lenient." *Philip Morris USA,* 219 F.R.D. at 498. Here, Joymax has specifically stated that it spent over $10 million on marketing and development of Silkroad Online (Decl. of Kang Ji Ho, ¶ 4).    Because the defendants chose to default (and to immediately close their business), rather than to appear before this Court, Joymax has not been able to obtain any discovery.  As a result, Joymax is unable to present evidence of the profits obtained by the guilty parties and is restricted to estimating its losses, which are stated, under penalty of perjury, to exceed the $500,000 amount requested in the Complaint.  Had the defendants appeared and been adjudged liable to Joymax, the Court would have been able to assess actual damages based on responses to discovery. It seems unusual to say that a party which defaults is in a <u>better</u> position

1  (because no actual damages will be assessed, due to the lack of information from
2  discovery) than a party which elects to appear.

3     In any case, if the Court nonetheless determines that the evidence submitted
4  by Joymax is insufficient, Joymax would request, based on the evidence presented
5  of intentional theft and unauthorized use of the server software, that the Court find
6  intentional copyright infringement and award the statutory maximum of $150,000.

7  ## Legal Standard on Relief Requested – Injunction and
8  ## Transfer of Domain Name

9     The other crucial aspect of relief, requested by Joymax, is reassignment of
10 the domain name www.ecsro.net.  As alleged in the Complaint, and as confirmed
11 by the Declaration of Kang Ji Ho, Joymax understands that the domain name
12 "www.ecsro.net" was selected to portray "**E**uropean **C**ommunity **S**ilk **R**oad
13 **O**nline."  Thus, the URL was used not only to support the copyright infringement
14 but also to support the trademark infringement.

15    Because of the importance of this relief to Joymax the complaint names
16 www.ecsro.net as a defendant.  No appearance has been made before this Court by
17 or on behalf of www.ecsro.net.  And, for that reason, this Court has entered a
18 default as to www.ecsro.net.

19    Joymax acknowledges that there is authority suggesting that a domain name
20 cannot be reassigned based on a bare allegation that it has been used for copyright
21 infringement.  See *Righthaven LLC v. DiBiase*, No. 2:10-cv-01343-RLH, 2011 WL
22 1458778, at *2 (D.Nev. Apr. 15, 2011).  However, in this case, Joymax has also
23 alleged that such domain name is potentially confusing of its trademark, which is a
24 classic ground supporting reassignment.

25    Upon review of the most recent cases, more fully referred to below, Joymax
26 believes that the correct procedure is to request a Permanent Injunction against
27 infringement of the Silk Road Online copyright, in combination with an Order for
28 transfer of the domain name.  Joymax contends that, by the default, it has satisfied

the legal requirements of demonstrating that it is entitled the relief sought in the Complaint, that it has no adequate remedy at law and there is no indication in the record of any public interest which would be compromised.

Several courts, specifically when handling defaults under the Lanham Act (trademark), have entered permanent injunctions which includes an Order to transfer the allegedly infringing domain names.   Copies of the following very recent orders are attached to this memorandum.  See *Hogar v. Hogar* (M.D. FL May 23, 2011) Case No. 6:10-cv-1629-Orl-31DAB and *Mamiya America Corporation v. Huayi Brothers* (E.D. NY March 31, 2011) Case No. 09-CV-5501 (ENV).

A more complete discussion of the court's inherent power to order the transfer of a domain name, so as to provide appropriate relief, can be found in *Craigslist v. Meyer* (N.D. Cal. February 11, 2011) Case No. 09-04737 MMC, at section B.3., a copy of which is also attached hereto.

THEREFORE, Joymax would request relief as follows:

First Claim for Relief (Copyright Infringement)

- As requested in paragraph 30 of the Complaint, $500,000 for actual damages (17 USC § 504(b)) or, in the alternative, the sum of $150,000 as statutory damages for willful infringement (17 USC § 504(c)(2))

- As requested in paragraph 31 of the Complaint, attorney's fees and costs (17 USC § 505) in the amount of $25,000 for fees and $4,750 for costs, pursuant to the Declaration of Steven Brower.

- As requested in paragraph 29 of the Complaint, a Permanent Injunction prohibiting further use of the infringing software.

Second and Third Claim for Relief (Trademark Infringement)

- Request for damages waived to avoid any argument of duplicative damages.

- As requested in paragraph 41, a Permanent Injunction prohibiting the defendants from use of the Silkroad Online trademark, or any confusingly similar mark, including the www.ecsro.net domain name and an order that the domain name registrar reassign www.escro.net to Joymax.

Fourth Claim for Relief (Trade Secrets)

- Request for damages waived to avoid any argument that damages were duplicative of the damages awarded for Copyright Infringement.

WHEREFORE, Joymax would request that the Court enter a Default Judgment consistent with the relief requested herein. Counsel for Joymax will provide a proposed form of Order upon instructions from the Court about the scope of relief to be granted.

DATED: May 31, 2011

BUCHALTER NEMER
A Professional Corporation

By:_____
STEVEN BROWER
Attorneys for Plaintiff
Joymax Co., Ltd.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

APPLICATION FOR ENTRY OF DEFAULT JUDGMENT

HOGAR

**Loislaw Federal District Court Opinions**

HOGAR C.R.E.A. INTL. OF FL. v. HOGAR C.E.R.A. INC. (M.D.Fla. 5-23-2011)

HOGAR C.R.E.A. INTERNATIONAL OF FLORIDA, INC., HOGAR C.R.E.A. INTERNATIONA

INC. & HOGAR C.R.E.A., INC., Plaintiffs, v. HOGAR C.E.R.A. INCORPORATED OF

FLORIDA and CARMELO RUIZ, Defendants.

Case No. 6:10-cv-1629-Orl-31DAB.

United States District Court, M.D. Florida, Orlando Division.

May 23, 2011

**ORDER**

GREGORY PRESNELL, District Judge

This cause comes before the Court on the Motion for Default Judgment Against Defendants Hogar C.E.R.A. Inc. of Florida and Carmelo Ruiz (Doc. No. 73), filed February 18, 2011.

On May 5, 2011, the United States Magistrate Judge issued a report (Doc. No. 78) recommending that the motion be granted and that a permanent injunction be entered against the above defendants. No objections have been filed. Therefore, it is **ORDERED** as follows:

1. The Report and Recommendation is **CONFIRMED** and **ADOPTED** as part of this Order.

2. The Motion for Default Judgment is **GRANTED**.
Page 2

3. A permanent injunction is hereby **ENTERED** prohibiting Defendants, their officers, agents, servants, employees, and/or all persons acting in concert or participation with them or any of them, from: (1) using the Hogar C.E.R.A or Hogar C.R.E.A name and marks, or confusingly similar variations thereof, alone or in combinations with any other letters, words, letter strings, phrases, or designs in commerce or in connection with any business or for any other purpose (including, but not limited to, on web sites, in domain names, and as names for business entities); and (2) registering or trafficking in any domain names containing the Hogar C.E.R.A or Hogar C.R.E.A name or marks, or confusingly similar variations thereof, alone or in combination with any other letters, words, phrases or designs; and (3) a permanent injunction requiring the current domain name registrar to transfer the www.hogarcera.com domain name to Hogar C.R.E.A.,

Inc.

    4. The Court reserves jurisdiction to award compensatory
damages, interest, costs, and attorneys' fees incurred by the
Plaintiffs as a result of prosecuting this action. Plaintiffs
shall file their motion and memorandum of law for such relief
within fourteen (14) days from the date of this order.

    5. The Clerk is directed to close the file.

    **DONE** and **ORDERED** in Chambers, Orlando, Florida.

Copyright © Copyright © 2011 CCH Incorporated or its affiliates

11

MAMIYA

## Loislaw Federal District Court Opinions

MAMIYA AMERICA CORPORATION v. HUAYI BROTHERS, INC. (E.D.N.Y. 3-31-2011)

MAMIYA AMERICA CORPORATION, Plaintiff, v. HUAYI BROTHERS, INC., Defendant.

09-CV-5501 (ENV) (JO).

United States District Court, E.D. New York.

March 31, 2011

### ORDER

ERIC VITALIANO, District Judge

Plaintiff Mamiya America Corporation ("Mamiya") brought this action on December 16, 2009 against defendant HuaYi Brothers, Inc. ("HuaYi") pursuant to the Lanham Act, alleging trademark infringement, cyberpiracy, and unfair competition. Defendant was served with the Complaint on January 19, 2010. After defendant failed to appear or otherwise respond to the Complaint, plaintiff moved for default judgment on April 12, 2010. On May 20, 2010, the Court granted plaintiff's motion for default judgment and referred the action to Magistrate Judge James Orenstein to conduct an inquest.

Following a review of the relevant submissions, Magistrate Judge Orenstein issued a Report and Recommendation ("R & R") on March 11, 2011, recommending that judgment be entered against defendant in the amount of $36,612.65, reflecting $25,000.00 in statutory damages, $2,013.70 in pre-judgment interest on those damages, $8,970.00 in attorneys' fees, and $628.95 in other costs. Judge Orenstein further recommended that the Court issue a permanent injunction and an Order directing HuaYi to cease using the domain name profotoconnect.com and transferring that domain name to Mamiya. No objections to Judge Orenstein's R & R have been
Page 2
timely filed.

In reviewing a report and recommendation, the court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Moreover, in order to accept a magistrate judge's report and recommendation where no timely objection has been made, the "court need only satisfy itself that there is no clear error on the face of the record." Urena v. New York, 160 F.Supp.2d 606, 609-10 (S.D.N.Y. 2001) (quoting Nelson v. Smith, 618 F.Supp. 1186, 1189 (S.D.N.Y. 1985)).

After careful review of all the evidence in the record below, the Court finds Magistrate Judge Orenstein's R & R to be correct, comprehensive, well-reasoned, and free of any clear error. The Court, therefore, adopts the R & R in its entirety as the opinion of the Court. Accordingly, for the reasons stated in the R & R, the plaintiff is awarded $25,000.00 in statutory damages, $2,013.70 in pre-judgment interest on those damages, $8,970.00 in attorneys' fees, and $628.95 in other costs, for a total of $36,612.65. The Court also enters this Order permanently enjoining HuaYi from using the **domain name** profotoconnect.com and directing HuaYi to **transfer** that **domain name** to Mamiya forthwith.

The Clerk is directed to enter Judgment and to close this case.

**SO ORDERED.**
Page 1

Copyright © Copyright © 2011 CCH Incorporated or its affiliates

13

CRAIGSLIST

**Loislaw Federal District Court Opinions**

CRAIGSLIST, INC. v. MEYER (N.D.Cal. 2-11-2011)

craigslist, Inc., a Delaware corporation, Plaintiff, v. Christopher Meyer;

Sean Meyer; XLR Publications, Inc., a Delaware corporation; John Doe d/b/a

cladgenius.com; John Doe d/b/a caposter.net; John Doe d/b/a pvagenius.com;

and Does 7 through 25, inclusive, Defendants.

Case No. CV 09-04737 MMC.

United States District Court, N.D. California, San Francisco Division.

February 11, 2011

Brian Hennessy (SBN 226721), **Perkins Coie LLP**, Palo Alto, CA.

Elizabeth L. McDougall, WA Bar No. 27026 (*pro hac vice*), **Perkins Coie LLP**, Seattle, Washington, Attorneys for Plaintiff craigslist, Inc.

~~AMENDED [PROPOSED]~~ ORDER GRANTING PLAINTIFF CRAIGSLIST, INC.'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS CHRISTOPHER MEYER, SEAN MEYER AND XLR PUBLICATIONS, INC.; VACATING HEARING

MAXINE CHESNEY, District Judge

Plaintiff craigslist, Inc.'s ("craigslist") Motion for Default Judgment against Defendants Christopher Meyer, Sean Meyer and XLR Publications, Inc. (collectively "Defendants") came before the Court, the Honorable Maxine M. Chesney presiding. Having jurisdiction over this suit, having reviewed the moving papers, any opposing and reply papers, and all supporting declarations and exhibits filed with the Court, the Court GRANTS Plaintiff craigslist, Inc.'s Motion for
Page 2
Default Judgment against Defendants Christopher Meyer, Sean Meyer and XLR Publications, Inc. Accordingly, the hearing scheduled for February 18, 2011 is hereby VACATED.

**RATIONALE OF DECISION**

**I. BACKGROUND**

**A. Factual Allegations**

In its Second Amended Complaint ("SAC"), filed on December 12, 2010, Electronic Case Filing Docket Entry ("DE") 45, Plaintiff

craigslist alleges as follows:

Plaintiff craigslist owns and operates the website www.craigslist.org, which provides, *inter alia*, an Internet-based local classified ad forum and service. The craigslist website allows users to post classified ads on webpages for a particular geographic area and within a specific category of products or services within that geographic area. SAC ¶¶ 30, 43. To restrict access to its webpages and protect its services, craigslist requires users to agree to its online Terms of Use ("TOU"), and employs technological security measures to enforce the TOU and to prohibit unauthorized access and use of craigslist webpages and services. *Id.* ¶¶ 49, 55-67. The TOU grant users a limited, revocable, nonexclusive license to access the craigslist website and use craigslist's services. *Id.* ¶ 39. Specifically, the TOU prohibit posting advertisements on behalf of others, accessing the craigslist site to facilitate posting advertisements on behalf of others, using a Posting Agent (a third-party agent or service that offers to post content on the website on behalf of others), and using any automated device or computer program that enables posting without each posting being entered manually. *Id.* ¶¶ 41. craigslist's website has a unique and distinctive design that is meant to be easy to understand and easy to use. *Id.* ¶¶ 68-69. craigslist's website is a work of authorship protected by copyright law, and craigslist has registered copyrights in its website. *Id.* ¶¶ 72-75.

Defendants, operating the websites and businesses at www.cladgenius.com, **Page 3** www.pvagenius.com, and www.pvasuperman.com, develop, advertise, and sell software to automate posting ads on craigslist and circumvent craigslist's security measures — in violation of the TOU, craigslist's intellectual property rights, and other rights under the law. *Id.* ¶ 84. Specifically, Defendants develop, offer, market and sell software, called CLAD Genius, and other automated devices and related services through their interactive websites and www.cladgenius.com, and www.pvagenius.com, which redirects to www.pvasuperman.com. *Id.* ¶ 84; Buxbaum Decl. ¶ 6. The CLAD Genius software enables the automated posting of ads on craigslist (i.e., posting without each ad being entered manually), including circumventing craigslist security measures to do so. *Id.* ¶ 84. The Pro and Lite versions of the CLAD Genius software include the "Craigslist CAPTCHA Entry" feature that allows users to use separately purchased CAPTCHA credits to bypass the craigslist CAPTCHA security measure. *Id.* ¶ 88. Defendants' CLAD Genius Pro also includes the PVA Creator feature that creates craigslist phone verified accounts. *Id.* ¶ 89. Through the websites www.pvagenius.com and www.pvasuperman.com, Defendants sell phone verified accounts ("PVAs") for use in circumventing craigslist's phone verification security measures. *Id.* ¶ 92; Sargent Decl. Ex. 3.

15

**B. Procedural History**

craigslist filed its original Complaint on October 5, 2009. DE 1. On February 26, 2010, craigslist filed its First Amended Complaint, naming Christopher Meyer, Sean Meyer and XLR Publications, Inc. as Defendants. DE 19. After being served, Defendants failed to respond and the Clerk of the Court entered Default against Defendants on August 19, 2010. DE 35. On December 2, 2010, craigslist filed its Second Amended Complaint and promptly served it on Defendants. DE 45, 46, 47. Defendants again failed to respond and Default was entered on December 28, 2010. DE 50.

Presently before the Court is Plaintiff craigslist's Motion for Default Judgment against Defendants Christophe Meyer, Sean Meyer and XLR Publications, Inc.
Page 4

## II. STANDARDS

Once Default has been entered, the Court may enter a Default Judgment against defendants under Fed.R.Civ.P. **55**(b). *Eitel v. McCool*, **782 F.2d 1470**, **1471-72** (9th Cir. 1986). The Ninth Circuit has enumerated the following factors for a district court to consider when determining whether to grant default judgment:

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.*

## III. DISCUSSION

Plaintiff craigslist moves the Court for entry of default judgment against Defendants on the ground that Defendants have failed to appear in this action.

**A. Default Judgment**

It is in the Court's discretion to grant a default judgment under Fed.R.Civ.P. **55**(b). *Eitel*, **782 F.2d at 1471-72**. In determining whether it is appropriate to grant a default judgment the Court applies the *Eitel* factors.

First, Defendants have failed to appear or take any action in this matter. Defendants have made no showing of excusable neglect. If default judgment is not granted, craigslist would

suffer prejudice in that it would be without recourse to prevent
Defendants from infringing craigslist's rights in the future and
without recourse to recover for the harm and damages Defendants
have caused craigslist already. *Elektra Enter. Group v. Avery*,
No. CIV S-06-2541 WBS EFB, 2007 WL 2023545, at *1 (E.D. Cal. July
11, 2007). The court finds that Defendant's failure to
demonstrate excusable neglect combined with the possibility of
prejudice to craigslist favors default judgment.
Page 5

    Second, once the Clerk enters default the well-pled factual
allegations regarding liability are taken as true. *Fair Housing
of Marin v. Combs*, **285 F.3d 899**, **906** (9th Cir. 2002). Here
default was entered against Defendants on December 28, 2010. DE
50. After reviewing the SAC, the Court finds craigslist has
adequately alleged violations of the Digital Millennium Copyright
Act, **17 U.S.C. § 1201**, *et seq.*, the Computer Fraud and Abuse Act,
**18 U.S.C. § 1030**, California Penal Code § **502**, breach of
contract, inducing breach of contract, intentional interference
with contractual relations, and fraud. Since the allegations of
the Complaint are taken as true, there is no possibility of a
dispute concerning material facts. Consequently, all of these
factors favor entry of default judgment.

    The sum of money at stake is not inconsequential, but neither
is the harm caused by Defendants' conduct. Plaintiff craigslist
seeks monetary damages in an amount between $455,800 and
$5,697,500. Plaintiff craigslist also seeks $135,159.80 in
attorneys' fees and costs. While the damages sought are
significant, they are not excessive in light of the alleged
conduct of Defendants. Therefore, the Court finds that this
factor favors entry of default judgment.

    In summary, the Court finds that the Eitel factors weigh in
favor of granting default judgment. Accordingly, the Court GRANTS
Plaintiff craigslist's Motion for Default Judgment.

**B. Remedy**

    Plaintiff craigslist moves for the following remedies: (1)
statutory damages, (2) injunctive relief, (3) an order directing
the **transfer** of **domain names** that Defendants use to conduct their
illegal craigslist-related activities, and (4) an award of
attorneys' fees and costs.

    **1. Statutory Damages Under the Digital Millennium Copyright Act**

    The Court must determine what amount, if any, in statutory
damages under the DMCA craigslist is entitled to. The DMCA allows
a successful plaintiff to recover an award of statutory damages
in lieu of actual damages of between $200 and $2,500 per act of
circumvention, device,
Page 6

component, offer, or performance of service. *See*
**17 U.S.C. § 1203**(c)(3)(A). Courts have wide discretion to determine the
appropriate level of statutory damages within this range. *Peer
Int'l Corp. v. Pausa Records, Inc.*, **909 F.2d 1332**, **1336** (9th Cir.
1990).

    In the course of its damages discovery, craigslist received
transaction logs from Plimus, a payment processor used by
Defendants, for sales related to cladgenius.com and
pvagenius.com. Excerpts of the Plimus transaction logs are
attached as Sargent Decl. Exs. 6-7. This information shows that
Defendants sold at least 496 copies of CLADGenius: Pro software
containing both CAPTCHA and phone verification circumvention
components, at least 67 copies of CLAD Genius: Lite containing
CAPTCHA circumvention components, and at least 1,220 phone
verification circumvention devices through their website
pvagenius.com. Based on this evidence, the Court finds that
Defendants sold at least 563 CAPTCHA circumvention components or
devices and 1,716 components or devices for circumventing
craigslist's phone verification system.

    Therefore, the Court concludes that Defendants sold at least
2,279 components or devices that circumvent the security measures
protecting the copyright-protected portions of craigslist's
website. The Court also finds that an award of statutory damages
in the amount of $750 per component or device is warranted by
Defendants' deliberate disregard of craigslist's rights, and
because Defendants have refused to cease their injurious
activities. Accordingly, the Court awards craigslist statutory
damages under the DMCA in the amount of $1,709,250

## 2. Injunctive Relief

    Plaintiff craigslist moves for a permanent injunction pursuant
to the CFAA, **18 U.S.C. § 1030**(g) and the DMCA,
**17 U.S.C. § 1203**(b)(1).

    It is appropriate to issue an injunction as part of a default
judgment. *Elektra Ent. Group Inc. v. Crawford*, **226 F.R.D. 388**,
**393-94**; *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103
Page 7
(N.D. Cal. 2003). To obtain a permanent injunction, a plaintiff must
show "(1) that is has suffered an irreparable injury; (2) that
remedies available at law, such as monetary damages, are
inadequate to compensate for that injury; (3) that, considering
the balance of hardships between the plaintiff and defendant, a
remedy in equity is warranted; and (4) that the public interest
would not be disserved by a permanent injunction." *Geertson Seed
Farms v. Johanns*, **570 F.3d 1130**, **1136** (9th Cir. 2009).

    Here, Plaintiff craigslist has alleged that Defendants' conduct
has damaged craigslist, and caused and continues to cause
irreparable and incalculable harm and injury to craigslist. SAC

18

¶¶ 110-118, 128-29. Moreover, craigslist has suffered lost
reputation and goodwill and has lost users as frustration with
the impacts from Defendants' misconduct has grown and craigslist
has struggled to stop them. *Id.* ¶¶ 114-15. craigslist contends
that if not permanently enjoined, Defendants will continue to
violate craigslist's rights. Consequently, the Court finds that
injunctive relief is appropriate under the circumstances.

   Accordingly, the Court GRANTS craigslist's request for a
permanent injunction.

### 3. Transfer of Domain Names

   Plaintiff craigslist moves for an order directing the transfer
of domain names that Defendants use to conduct their illegal
craigslist-related activities.

   Where it is likely that Defendants will continue to use
websites and/or domains to exacerbate the harm to a plaintiff,
courts have used their inherent authority to enforce their own
orders and ordered the transfer of the domain names in the event
the Court finds it likely that a defendant will not comply with
the court's ordered injunctive relief. *See Xcentric Ventures,
L.L.C. v. Elizabeth Arden,* No. 2:08-cv-2299-HRH (D. Ariz. October
22, 2009) (Judgment). Furthermore, the registrars of the domain
names at issue have agreed through their contractual obligations
with The Internet Corporation for Assigned Names and Numbers
("ICANN") that
Page 8
they will comply with a court order directing the cancellation,
transfer or change in domain names . Internet Corp. for Assigned
Names and Numbers, UDRP ¶ 3(b) (Oct. 24, 1999), *available at*
http://www.icann.org/en/dndr/udrp/policy.htm (last visited Oct.
29, 2010)

   In light of the fact that Defendants have persisted in
operating their craigslist-related websites, and are likely to
ignore an injunction against the use of such domains, the Court
finds that it is appropriate to order the transfer of the
relevant domain names to craigslist.

   Accordingly the Court orders the transfer to craigslist within
10 days of receiving notice of this Order the domain names
"cladgenius.com," "pvagenius.com," "pvasuperman.com" and all
other domain names owned, operated, or registered by Defendants
that contain "cl", "craig" or "craigslist" or that are used to
offer or sell craigslist telephone verified accounts, CAPTCHA
solving products or services, or products or services that permit
the posting of content on craigslist without each ad being
manually posted by the user.

### 4. Attorneys' Fees and Costs

Plaintiff craigslist moves for an award of attorneys' fees and costs.

A court may, in its discretion, "award reasonable attorney's fees to the prevailing party." **17 U.S.C. § 1203**(b)(5). Here, Plaintiff craigslist requests attorneys' fees totaling $132,115.73 and costs totaling $3,044.07. The fees include work related to pleadings, investigation of Defendants' activities, service, due to Defendants' efforts to evade detection, and motion practice. The Court finds the requested fees and costs reasonable in light of the work performed.

Accordingly, the Court awards attorneys' fees and cost in the amount of $135,159.80.

### IV. CONCLUSION

IT IS HEREBY ORDERED THAT:

A. Plaintiff craigslist, Inc.'s Motion for Default Judgment against Defendants Christopher Meyer, Sean Meyer and XLR Publications, Inc. is granted.
Page 9

B. Defendants Christopher Meyer, Sean Meyer and XLR Publications, Inc. and their agents, servants, employees, attorneys, affiliates, distributors, successors and assigns, and any other persons acting in concert or in participation with them are now and forever enjoined from:

(a) Manufacturing, developing, creating, adapting, modifying, exchanging, offering, distributing, selling, providing, importing, trafficking in, or using any automated device or computer program (including, but not limited to, any technology, product, service, device, component, or part thereof) that enables postings on craigslist without each posting being entered manually;

(b) Manufacturing, developing, creating, adapting, modifying, exchanging, offering, distributing, selling, providing, importing, making available, trafficking in, or using content that uses automated means (including, but not limited to, spiders, robots, crawlers, data mining tools, and data scraping tools) to download or otherwise obtain data from craigslist;

(d) Copying, distributing, displaying, creating derivative works or otherwise using protected elements of craigslist's copyrighted website (located at www.craigslist.org), including, but not limited to, the website's post to classifieds, account registration and account log in expressions and compilations, and from

20

inducing, encouraging, causing or materially
contributing to any other person or entity doing the
same;

(e) Circumventing technological measures that control
access to craigslist's copyrighted website and/or
portions thereof (including, but not limited to,
CAPTCHAs and RE-CAPTCHAs), and from inducing,
encouraging, causing or materially contributing to any
other person or entity doing the same;

(f) Manufacturing, developing, creating, adapting,
modifying, exchanging, offering, selling, distributing,
providing, creating, importing, trafficking in, or
using technology, products, services, devices,
components, or parts thereof, that are primarily
designed or produced

Page 10

for the purpose of circumventing technological
measures and/or protection afforded by technological
measures that control access to craigslist's
copyrighted website and/or portions thereof, and from
inducing, encouraging, causing or materially
contributing to any other person or entity doing the
same;

(g) Accessing or attempting to access craigslist's
computers, computer systems, computer network, computer
programs, and data, without authorization or in excess
of authorized access, including, but not limited to,
creating accounts or posting content on the craigslist
website, and from inducing, encouraging, causing,
materially contributing to, aiding or abetting any
other person or entity to do the same;

(h) Manufacturing, developing, creating, adapting,
modifying, exchanging, offering, selling, distributing,
providing, importing, trafficking in, purchasing,
acquiring, transferring, marketing or using any
program, device, or service designed to provide an
automated means of accessing craigslist's website,
automated means of creating craigslist accounts, or
automated means of posting ads or other content on
craigslist's website, including, but not limited to,
any program, device, or service that is, in whole or in
part, designed to circumvent security measures on the
craigslist website;

(i) Repeatedly posting the same or similar content on
craigslist, posting the same item or service in more
than one category on craigslist, posting the same item
or service in more than one geographic area on
craigslist, and from inducing, encouraging, causing,

21

assisting, aiding, abetting or contributing to any
other person or entity doing the same;

(j) Posting ads on behalf of others, causing ads to be
posted on behalf of others, and accessing craigslist to
facilitate posting ads on behalf of others;

(k) Using, offering, selling or otherwise providing a
third-party agent, service, or intermediary to post
content to craigslist;

(l) Misusing or abusing craigslist, the craigslist
website and craigslist services by by violating the
craigslist TOU;
Page 11

(m) Accessing or using craigslist's website for any
commercial purpose proscribed by the craigslist TOU;
and

C. Defendants shall transfer to craigslist within 10 days of
receiving notice of this Order the domain names "cladgenius.com,"
"pvagenius.com," "pvasuperman.com" and all other domain names
owned, operated, or registered by Defendants that contain "cl",
"craig" or "craigslist" or that are used to offer or sell
craigslist telephone verified accounts, CAPTCHA solving products
or services, or products or services that permit the posting of
content on craigslist without each ad being manually posted by
the user. craigslist may serve Defendants with notice of this
Order by email. If Defendants do not comply with the Order within
10 days of receiving notice of this order the registrars for the
domains shall transfer the domains to craigslist.

D. Judgment is entered against defendants Christopher Meyer,
Sean Meyer and XLR Publications, Inc. in the amount of
$1,844,409.80 This represents:

1. Statutory damages for violations of the Digital Millennium
Copyright Act, **17 U.S.C. § 1201**, in the sum of $1,709,250

2. Reasonable attorneys' fees and costs in the amount of
$135,159.80.

Dated: February 11, 2011

Copyright © Copyright © 2011 CCH Incorporated or its affiliates